Court of Appeals. The Honorable Justice of the United States Court of Appeals is in for the Seventh Judicial Circuit. Period, period, period. All persons having business before the Assembly Court are admonished to draw near and give their attention. The Court is now sitting without the State of the United States and the Assembly Court. Good afternoon, everyone. We're here today on a successive appeal for oral argument, a standalone case. The Court will call Appeal 24-3014, Otis Elion v. United States, and we'll begin, Ms. Brecker, with argument from you. Good afternoon, and may it please the Court, Kimberly Broker for Petitioner Otis Elion. In Elion 1, this Court held that Mr. Elion suffered prejudice when his counsel failed to object to an erroneous career offender designation that doubled his guidelines range. This Court then remanded solely for the District Court to decide whether counsel's performance was deficient. This Court also directed the District Court specifically to the Court's decision in Bridges, which makes clear that the question in these circumstances is whether counsel acted for strategic reasons that would excuse what would otherwise be an ineffective failure to object to a career offender designation. On remand, the District Court determined that counsel's failure to object was not strategic. Under Bridges, that should have ended the inquiry in Mr. Elion's favor. The District Court nonetheless held that counsel's performance was not deficient. This Court should reverse the District Court for either of two independent reasons. First, counsel failed to object to an erroneous career offender designation based on a mistake of law, not based on any strategic considerations. As a matter of law, that was deficient performance. Second, in 2018, counsel attested in a sworn affidavit that she performed a divisibility analysis on a penalty statute, not on the statute that created the underlying substantive offense. Ms. Broker, is it Elion's argument that Attorney Kennecke failed to foreshadow Elion 1's conclusion, so therefore her performance was deficient, such as Coleman or Bridges? I do think that's correct under Coleman and Bridges, but I actually think it's even easier here. It's not just that she failed to foreshadow the ultimate conclusion that this Court reached. It's that she thought there was no colorable argument at all on divisibility. And that was clearly not true at the time of the sentencing. There was no foreshadowing necessary for that because the Court had already been clear, this Court and the Supreme Court, that you need to have certainty before imposing a career offender designation. That was clearly lacking here. Even the District Court and the government call this an unsettled area of law. In the categorical approach, if it's an open question, if it's an unsettled area of law, you raise the argument. So you're alleging deficient performance as a result of the failure to raise the argument. Correct. Is it also deficient, according to your argument, that the argument that should have been raised should have been foreseen? In the sense that she should have foreseen that she needed to raise the argument, yes, that's our position. It's not our position that she needed to, in 2017, guess correctly what this Court would hold in 2023. That wasn't her job as a defense attorney. Her job was to figure out which arguments to raise. I'm trying to place this case within Bridges, Coleman, Harris, some of our other cases. Can you help us with that? Yeah. I think Bridges and Coleman speak clearly to what the answer is here. And that's because, as I mentioned, those cases make clear that if counsel fails to assert a categorical approach argument, the question is whether they did so for a strategic reason. I think Harris does the same thing. In Harris, the Court said there could have been a strategic reason because the defendant went in with an agreement on what the sentence would be. And if counsel had raised the categorical approach argument there, it would have risked losing that deal and a mandatory life sentence. Here, Mr. Elian had no deal. So when he went in, the only question was what was his guidelines range. That was the entire ballgame. All counsel had to do was spot the issues with respect to whether the guidelines range was correct. She didn't do so. That was a mistake of law. And again, to answer your question, Bridges makes very clear that, okay, the question at that point is whether counsel didn't raise the argument for a strategic reason. There's no strategic reason here. So what I understood you to be arguing is that the mistake of law that was made here is it's plain, it's apparent, it's clear from the face of the affidavit. It looks like the categorical approach was undertaken on a penalty statute. And you all in your briefs are very clear to say that is absolutely not the right way that it goes. And that's what you, I believe, characterize as the mistake of law, correct? So there's two different arguments we have, and they're independent. So on the first argument, which is the one I was talking about with Judge Brennan, that is assuming that what she said at the evidentiary hearing is correct and setting aside the affidavit. But yes, I agree with you. Our second argument, and I certainly think a way that you can and should find for Mr. Elion is that the affidavit is clear. It says that she performed a divisibility analysis on a penalty statute. The district court referred to that as woeful incompetence. That's just incorrect, and that is clearly a mistake of law. It was well-established at the time. Even counsel at A186 says you can't do a divisibility analysis on a penalty statute. There's just no question that that was sufficient performance. She gave a different story at the evidentiary hearing, but as we argued in our brief, in our opening brief, nothing that the district court said has anything to do with counsel's credibility on the stand, and we don't think you need to defer to the district court on that score. The government didn't defend the district court's reasoning at all. The government argued a couple different things, three different things, none of which is persuasive. The first is that, in fact, her evidentiary hearing testimony should be viewed as coming earlier in time than her affidavit, despite the fact that— The argument you're making about the affidavit is one that I take, if you extend it a little bit, I don't even see why there was a need for an evidentiary hearing, because I think the point you're making is that the air is so clear from the face of the affidavit, it's open and shut. Game over. I completely agree. And this came up in the first round when you had someone else in front of you for Mr. Elian. I think you asked Judge Sketter if it needed to be remanded. I'm not sure that it did. It is surprising to me that we are back here today arguing this. I will say that in Bridges, when the court sent it back in similar circumstances, the parties filed a joint motion for a resentencing. In Coleman, the parties stipulated that there should be a resentencing. It does, though, seem, if you were on the receiving end of the remand as the district court judge—I mean, the district court judge here did exactly what you would think a district court judge would do upon receiving a case back like this, right? Sure. I have the affidavit. I'm going to take testimony from defense counsel, sentencing counsel at the time, and we'll see what she has to say about how she came to this conclusion, and then I'll make findings, including credibility findings, and we'll go from there. I mean, so it's hard to look at what the district court did and say, you know, there's some kind of, like, procedural error that occurred on remand in the district court withholding a hearing. Well, I don't think you need to find procedural error here. And again, I think it's clear from the face of the affidavit that she did the wrong thing. But just to be totally clear, we have two separate and independent arguments, and if you think she was credible at the hearing, that's fine under our first argument. She still rendered deficient performance. And that's clear under this court's cases like Coleman and Bridges, but it's also clear under cases like Gardner and Dixon and Cates. In Gardner, defense counsel—this court found deficient performance where defense counsel failed to raise a defense based on a mistake of law, and the prosecutor and the district court made the same mistake as defense counsel, and this court still had said it's deficient performance. If you make a mistake of law, that's deficient. So, isn't that an awfully high standard to require an attorney to foresee how a panel views this and then say, well, that's a mistake, that's deficient performance? Attorneys make mistakes quite a bit. It's whether or not that mistake ultimately goes to that level of being a strickland level. Two points. First, again, it is not our argument that she needed to foresee what the court did ultimately in this case. It's our argument that she failed to raise a defense that she should have raised. And that argument is based on certainty. Well established at the time of sentencing, it has nothing to do with what the court ultimately held. I mean, again and again, the government says this is an unsettled area of law, it's an open question. Exactly. The divisibility of the statute is an open question, so you have to raise it if you're defense counsel. That means you have great arguments that the government cannot prove to a certainty that it should impose the career offender designation. So I don't think we're holding her to a high standard at all. And I think I had a second point, but now I've forgotten it. We're going to give you some more time to both sides, so go ahead. Okay. You know, just the second point here is in terms of whether this is too high of a standard. If there is a high standard, it's because this court set the high standard. I mean, Bridges and Brockmiller are clear, you need to have expert knowledge of the federal sentencing guidelines as a defense attorney. And that's because the sentencing guidelines are the whole ballgame in the federal system. If you had to write the opinion based upon the rule that you just are urging us to adopt, if there is a mistake of law, deficient performance is established under prong one of Strickland. How would you define what a mistake of law is? And the reason I'm asking that is against the backdrop of Judge Brennan's questions that law is often, there's often some uncertainty in law. There's often, you have to look forward and predict where law is going to go. How do you recommend we define that? What is a mistake of law? Well, I would recommend if you're worried about the opinion being too expansive, cabining it to the categorical approach, where again, you've already imposed a pretty high standard on defense counsel. But I would say that a mistake of law is when you misunderstand the law. Here she misunderstood the certainty requirement of the categorical approach. And that is clear from what she said, and it's clear from the government's arguments. Again, the point in the categorical approach context is that if there's uncertainty, you should raise it. You know, I can't, this is not a situation, although it is clear in your cases, again, like Dixon and Gardner, if you just get the law wrong, and you should have, everything, all the clues were there to figure it out at the time, that that's deficient performance. End of story. But in the categorical approach, it is a little bit different. Because the point, again, is not could counsel at the time divine what this court would do? The question is whether she had colorable arguments. And her mistake of law was in failing to realize that she had colorable arguments. Ultimately, they won, but that's sort of a matter for the prejudice prong, which you already held. The mistake, again, was just failing to assert the defense. And I would say, too, and then I will sit down, you know, to the extent there are mistakes of law, and you think we're holding defense counsel to a super high standard, and there's these minor mistakes that aren't actually going to matter, that will be taken care of on the prejudice prong. But we're not here talking about prejudice. We'll be giving you some rebuttal time.  Mr. Reed, we'll turn to you. Judges, may it please the court, Peter Reed for the government. The Strickland standard doesn't change because the categorical approach is at issue. And that's why this case is more like Resnick and cases like Resnick than it is like Coleman and Harris and that line of cases, Bridges. In Resnick, this court said that failure to object to an issue that is not settled law within the circuit is not unreasonable. And that's exactly what happened here. There was an issue that was not settled law within this circuit. The hearing below showed that counsel did the work. She went all the way down to the Shepherd documents and determined that the statute was not divisible. She thought it was clearly not divisible, or clearly was divisible based on the language in those Shepherd documents. Second, because she acted consistent with prevailing professional norms by not raising this argument, not challenging this predicate. Third, because the law at the time was not settled, as this court's decision in Hudson and the A Circuit decision in Robertson show. And fourth, because she made a strategic decision to focus on mitigation rather than looking at something that was not settled and raising that in front of the court. So take each of those in turn. First, looking at what counsel actually did. And I think this goes to Judge Scudder's question. Last time we were up here, we had an affidavit that frankly didn't make sense. It said that counsel had looked at the penalty statute to determine divisibility and not the substantive statute 404B, but it was clear that she had gotten to the verbs in 404B, because that's what she was looking for in the Shepherd documents. She moved to the Shepherd documents, looked and said, hey, I see a word that's in 404B and that indicates to me that it's divisible. So we asked her about this on remand and she said, I was mistaken in the affidavit. I, of course, looked at 404B. That's why I'm focused on the verbs that are in 404B. And the district court found that testimony to be credible in large part because defense counsel testified that she went back, looked at her notes and said, yes, that's what I did. I went to the statute. I looked at 404B and at the verbs in that statute. So based off her testimony below, counsel looked at the right cases. She looked at state statutes. She looked at state law. She looked at the Shepherd documents to determine divisibility and that's exactly what this court did in Ilion I. And really the only point of disagreement between what defense counsel did and what this court did is this court said that the Shepherd documents indicated divisibility, but did not clearly indicate divisibility and therefore found that Ilion was prejudiced. Defense counsel testified, look, I've looked at a lot. She's been a public defender for 29 years. She's looked at a lot of Ilion I. Shepherd documents. She said, to me, these are clear as can be. That was my judgment at the time. I thought the documents were clear. I thought the statute was divisible and to me, to her, it was not a viable argument at all because the statute was divisible. Certainly did not correctly. What she really said was that she, based upon her experience, was that delivery and distribution were 100% synonymous. Yes, Judge. My words, not exactly her, but that's what she testified to and as a result, there's no overbreath. There's a perfect match. Exactly, Judge. But what Ms. Broeker and her colleagues are pointing out is that when you look at the affidavit, you definitely don't do that by going through the penalty statute. You do that by going through, what is it, 404-B and approaching it from the offense conduct statute. And that's what counsel did. That's what she testified that she did below. That word, distribution, that's in 404-B, both in the affidavit and the testimony at  The hearing was very clear that her analysis came down to, does delivery in the Shepherd documents mean distribution in 404-B? She said yes. This court said it's not clear. The fact that she was unable to foreshadow that later decision was a reasonable call based on the Shepherd documents she had in front of her. I recognize opponents in counsel's distinction between whether she's wrong about the Shepherd documents and whether she should have raised it anyway, right? But her testimony was not that there was a 50-50 chance and so she didn't raise it. Her testimony was, I don't see an argument here at all. I don't think it's viable based off of the Shepherd documents. Forget the affidavit for just a second and go to Ms. Broker's point that somebody that's lawyering at this particular point in time, given the stakes for somebody like Mr. Elion with being a career offender, et cetera, unless the door is definitively closed on the argument, she should press it. That's what you do when you're representing people that face a lot of time in jail. So the first thing I'd tell you judges, that's just not what this court has said under Strickland. The court said in Resnick that where the law is unsettled, there's not a Strickland issue with choosing not to raise that argument and not make that objection. And the court has said this over and over again. Bridges cites to the Harris decision in 2004 where counsel didn't argue for the safety valve under particular facts. That was legal error. It was a mistake of law as defense counsel is arguing it because this court later said in Bingham in 2023 that the safety valve did apply under those circumstances. But this court said in that Harris decision, look, focusing on mitigation arguments makes perfect sense when whether the safety valve applies or doesn't apply is unclear. This court said the same thing in Harris in 2021. If the law is unsettled, if an argument is novel, then that's not a Strickland performance issue when the counsel chooses to focus on something else. Same thing in Resnick. Their law was uncertain about whether an objection to admission of a particular evidence was a valid objection or not. And the court said, well, that's not a Strickland performance error because the law is unclear. This court has said that over and over again. Where the law is not settled, it is not a Strickland performance problem. So to not raise it and to focus on something else that is settled, and that's what happened here as well. And I'd add it's not simply that the law was unclear here as it was in some of those cases. The law was really uphill for defense counsel making this argument. Certainly Ilion I came out later. But at the time, this court was receiving Anders' briefs on this issue. Should we challenge? Should we have challenged this? No. And that's what this court said in multiple Anders' cases. And I recognize that those are Anders' cases. That's a different procedural posture. But if defense counsel at the time is looking for what's the reasonable thing to do here, do I have an obligation to raise this? She could have looked at those Anders' decisions and said, the Seventh Circuit had said, no, this is frivolous. And that's consistent with her own conclusion, that this was not a viable argument at the time. And there weren't simply those Anders' cases, which this court abrogated in Ilion I, indicating that the law, in fact, was uphill for her making this argument. You pointed us towards Resnick and away from Bridges and Coleman. Ilion at length talks about Coleman. Is Coleman distinguishable? And if so, how? Judge, I think Bridges and Coleman need to be read based on their procedural posture. Procedural posture in both Coleman and Bridges is whether there should be a hearing at all. And that's the 2255B standard. It's a very high standard. It's like succeeding on a motion to dismiss. And so the court in Bridges and in Coleman are operating at a very high level of generality. The question is, if counsel had done nothing at all, as in Hinton, if there was a complete failure to investigate, would there then be a Strickland performance problem? And what Bridges and Coleman say is, yes, because we've been applying the categorical approach since 1990, because in 2018, we said that in Elder, the court said that this applies to career offender, because in De La Torre, this court said we should probably look at isomer mismatches. Those are different questions than the question before the court in this case, because we have remanded. It's a different standard under 2255. It's directly Strickland, not 2255B. And we know exactly why counsel did what she did here. She did all the work. This isn't a failure to investigate case like Hinton and those cases in Cates. Some of these cases cited in Bridges and Coleman. We know exactly what counsel did here, and we know why she did it. And that why was eminently reasonable. She did all the work. She went all the way down. She got the documents. She looked at the cases. And both the case law and the Shepard documents, in her view, suggested she should not be making this argument. So she refocused sentencing to the mitigation arguments that she did, in fact. So is that another way of saying you disagree with Ms. Broker, that there was any mistake of law committed? Judge, I appreciated your question about what a mistake of law means, because if you go back to Resnick and Harris and that whole line of cases, there's a mistake of law in the sense that this court later said it would have been better if counsel had raised this  Had they known what was coming down the road, yes, it was mistaken. In the Harris case, the safety valve applied. In the later Harris case in 2021, the career offender enhancement did not apply. In Resnick, the evidence shouldn't have come in. In that sense, it's a mistake of law. But under law at the time, it was not a mistake of law. And that's exactly what we have here. Under the law at the time that defense counsel was making this decision, this court had said, challenging, Illinois lookalike offenses, we don't see any basis for that either. Nobody does. It was considered frivolous. That's what counsel found, looking all the way down to Shepard documents, that's what this court found. And frankly, it's what the case law said, both under Robertson and Harris, or Hudson. Sure that was a different argument, but at the time, defense counsel looking to see whether should I challenge lookalike offenses as career offender enhancements, we found a whole slew of cases that suggested that the answer was no. The fact that Ileana One came along later and said, well, actually, yes, that happens as law develops. But at the time that counsel was making this decision, sentencing, there is no basis in law, or there's no suggestion in the case law that she should do so. And when she did the work, she did the full categorical analysis and came down to the Shepard documents. She made a reasonable judgment that it was not a viable argument. Help me with pronunciation. Is it Kenicky? You were present at the hearing. I, of course, asked her this prior to the hearing. It's Kenicky, I believe. Kenicky. Neither the government nor the defense offered her notes, correct? That is correct, Judge. Ms. Kenicky, I asked, can I look at these notes, of course. It was her position that they're privileged, work product privileged. She did offer to have the court review them in camera. And that was one point that the district judge made in support of his credibility finding that if she's just blatantly lying about what her notes say, it's probably a bad idea to do that and then offer them to the court. Ms. Kenicky was very apologetic for the way her affidavit was phrased. She said she went back to her notes, contemporaneous notes, from the time of sentencing and that she testified based off of those notes and offered them to the court for review in camera for confirmation. The court did not look at them, but they were offered. Thank you. And no further questions. Thank you, Mr. Reed. Ms. Broker, we'll give you five minutes on rebuttal. Let me start with an egregious mistake, which counsel for the government referenced. At page 38 of its brief, the government concedes that an egregious mistake of law is deficient in performance. And helpfully, this court has defined what an egregious mistake is in Williams, which the district court cited and which the government cites. It is the omission of something obviously better than the line of defense that counsel pursued. That's exactly what happened here. How so? How so? What you're saying is the defense attorney in hindsight should have focused on this issue as, I guess, in addition to the 3553 arguments she made or in lieu of the 3553 arguments she made. Hold on. Let me finish my question. And what credibility would she have with the district court? It's hard to be a trial lawyer, okay? It's hard to make strategy decisions about which are the best arguments you're going to put forth in front of the district judge. It's hard to decide which comes first, second, third, and is there a fourth and a fifth, right? So how is it so easy to say that this was an egregious mistake that she clearly should have pursued in lieu of other arguments at the time of sentencing, at the time she made the argument? She testified at the evidentiary hearing that there was no reason she could not have made both sets of arguments. So I'm not saying she had to do this in lieu of the mitigation arguments. She could have raised both. She could have put this last on the list of 17 arguments if she wanted to. She had the space and she had the time. That's what she testified to. She also testified that the mitigation arguments she made were basic. And she testified that she knew from her experience that Judge Gilbert would not like them. So this was not a situation where she thought, and I'll grant you, there are situations, Bridges acknowledges this, where a defense counsel may, for strategic reasons, not raise a categorical approach argument. That's not what happened here. The district court got that right. She had no strategic argument for not raising this defense. And she had no better arguments. And that's, again, her words when she said that Judge Gilbert, she knew, would not like the mitigation arguments. The second point is that the government has, again, elided the two arguments that she missed. She missed the lookalike counterfeit argument and she also missed the advertising argument. The Anders brief that the government is talking about, Hudson, Robertson, those are all to the first argument that I mentioned, the lookalike argument. As the government says in its brief, those say nothing about advertising, they say nothing about divisibility. So there was no uphill climb on divisibility, which counsel recognized. Third, the government testified that counsel did the work here because she made it all the way down to the Shepard documents. That's not what she testified and that's not what the government says in its brief. She started with the Shepard documents. That was her testimony. So even if you're not willing to go with me as far as the court has gone and Gardner and Dixon and Cates and say that a mistake of law is sufficient performance, if we look at what she actually did here, she did not do a reasonable divisibility analysis. She looked at the Shepard documents. She used, as you said, Judge Scudder, her experience to form the view that delivery and distribute were the same. But that's not even close to what the court did in Alien 1. What she should have done is look at state court decisions, look at the text of the statute, look at all the Shepard documents, not just the indictment. She did not testify that she did that for the divisibility analysis. The government also relied a lot on Resnick. I do think that Resnick, I understand the government's point with respect to Resnick, but this court in Bridges made very clear that in the context of the categorical approach, there are times when counsel has to anticipate a legal issue that is foreshadowed in the law. And if we're going to talk about cases cited in Bridges, then I'd like to talk about Winstead, the D.C. Circuit case that this court cited in Bridges, where counsel failed to raise an argument that every single court of appeals that had considered it rejected. And the court found that ineffective assistance. And again, this court cited that in Bridges. So as I've said, I think this is a clear case of deficient performance for one of two reasons, either because her testimony at the evidentiary hearing clearly described a mistake of law, or because the affidavit, which again, the government has completely stopped defending, describes clearly ineffective performance. So we would ask that the court reverse and remand for the district court to resentence Mr. Alien under the correct guidelines range. Thank you very much, Ms. Broecker. And thank you to your firm as well for undertaking this time-consuming, very deep, complex case. A great thanks to the court as well. Thanks to Mr. Breed for your hard work on all this, including below in the district court. The case will be taken under advisement.